**KELLER BENVENUTTI KIM LLP**
Tobias S. Keller (Cal. Bar No. 151445)
(tkeller@kbkllp.com)
Dara L. Silveira (Cal. Bar No. 274923)
(dsilveira@kbkllp.com)
101 Montgomery Street, Suite 1950
San Francisco, CA 94104
Tel.: (415) 496-6723 / Fax: (650) 636-9251

**ASK LLP**
Kara E. Casteel (Admitted Pro Hac Vice)
(kcasteel@askllp.com)
Gary D. Underdahl (Admitted Pro Hac Vice)
(gunderdahl@askllp.com)
2600 Eagan Woods Drive, Suite 400
St. Paul, MN 55121
Tel: (651) 406-9665 / Fax: (651) 406-9676

*Attorneys for Arch & Beam Global LLC,*
*as Trustee of the Shift*
*Technologies Liquidating Trust*

## UNITED STATES BANKRUPTCY COURT
### NOTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| In re: | Case No.: 23-30687 (HLB) (Lead Case) |
| SHIFT TECHNOLOGIES, INC., *et al.*,[1] | (Jointly Administered) |
| Debtors. | |
| Arch & Beam Global LLC, as Trustee of the Shift Technologies Liquidating Trust, | **Adv. No. _____** |
| Plaintiff, | |
| v. | **COMPLAINT TO AVOID AND RECOVER TRANSFERS PURSUANT TO 11 U.S.C. §§ 547, 548, AND 550 AND TO DISALLOW CLAIMS PURSUANT TO 11 U.S.C. § 502** |
| Envision WC MB Auto, LLC dba Mercedes Benz of West Covina, | |

[1] The last four digits of Shift Technologies, Inc.'s tax identification number are 5852. Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://omniagentsolutions.com/Shift. The Debtors' service address is 5955 De Soto Ave. Ste 100, Woodland Hills, CA 91367

Defendant.

Arch & Beam Global, LLC, in its capacity as trustee (the "Liquidating Trustee" or "Plaintiff") of the Shift Technologies Liquidating Trust (the "Liquidating Trust"), formed pursuant to the confirmed and effective *Debtors' Combined Disclosure Statement and Joint Chapter 11 Plan Dated July 16, 2024* [Dkt. No. 688] in the above-captioned jointly administered chapter 11 cases (the "Chapter 11 Cases") of Shift Technologies, Inc. and its affiliated debtors, by and through its undersigned counsel, files this complaint (the "Complaint") to avoid and recover transfers against Envision WC MB Auto, LLC dba Mercedes Benz of West Covina (the "Defendant") and to disallow any claims held by Defendant. In support of this Complaint, Plaintiff alleges the following upon information and belief:

## JURISDICTION AND VENUE

1. The United States Bankruptcy Court for the Northern District of California (the "Court") has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334(b).

2. This adversary proceeding is a "core" proceeding to be heard and determined by the Court pursuant to 28 U.S.C. § 157(b)(2). Plaintiff consents to entry of final orders and judgment by the Court.

3. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409(a).

4. The statutory and legal predicates for the relief sought herein are sections 502, 547, 548, and 550 of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code")[2] and Rules 3007 and 7001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## PROCEDURAL BACKGROUND

5. On October 9, 2023 (the "Petition Date"), Shift Technologies, Inc. and certain affiliated debtors (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code, commencing the Chapter 11 Cases. On October 9, 2023, the Court entered an order

---

[2] All references to "§" herein are to sections of the Bankruptcy Code, 11 U.S.C. §§ 101, *et seq.* unless otherwise noted.

authorizing the joint administration of the Chapter 11 Cases for procedural purposes pursuant to Bankruptcy Rule 1015(b).[3]

6.      On September 26, 2024, the Court entered an order (the "Confirmation Order")[4] confirming the *Debtors' Combined Disclosure Statement and Joint Chapter 11 Plan Dated July 16, 2024* (the disclosure statement portion thereof, the "Disclosure Statement," and the chapter 11 plan portion thereof, the "Plan," as may be modified, supplemented, and/or amended from time to time, and collectively, the "Combined Plan and Disclosure Statement)[5] and all Plan supplements, including the Shift Technologies Liquidating Trust Agreement (the "Trust Agreement").[6]

7.      The effective date of the Plan (the "Effective Date") occurred on October 12, 2024.[7] In accordance with the Plan and Confirmation Order, the Trust was established as of the Effective Date of the Plan, and the Debtors and the Trustee entered into that certain Trust Agreement.

8.      Pursuant to paragraph 12 of the Confirmation Order and Article X.A of the Plan, the Liquidating Trust Assets (as defined in the Plan), including all Causes of Action under Chapter 5 of the Bankruptcy Code, were transferred to the Trust.

9.      Pursuant to Article VII and Exhibit A of the Combined Plan and Disclosure Statement, General Unsecured Claims comprise an impaired class of creditors that are not expected to be paid in full.

**THE PARTIES**

10.      Pursuant to the Plan, Confirmation Order, and Trust Agreement, Plaintiff was appointed as the Trustee and is authorized and has standing, among other things, to prosecute and settle all Causes of Action under Chapter 5 of the Bankruptcy Code, including this avoidance action.

11.      Upon information and belief, Defendant was, at all relevant times, a vendor or creditor that provided goods and/or services to or for the Debtors. Upon further information and belief, at all relevant times, Defendant's principal place of business is located at 205 N. Citrus Street, West Covina,

---

[3] Docket No. 23. All docket items referenced are from Case No. 23-30687 (HLB), under which the Chapter 11 Cases are jointly administered.
[4] Docket No. 816.
[5] Docket No. 688.
[6] Docket No. 782-1.
[7] Docket No. 854.

California 91791. Plaintiff is informed and believes and on that basis alleges that Defendant is a limited liability company residing in and subject to the laws of Delaware.

## FACTUAL BACKGROUND

12. As more fully discussed in the both the Disclosure Statement and the *Declaration of Jason Curtis in Support of Chapter 11 Petitions and First Day Motions*,[8] the Debtors were a consumer-centric omnichannel retailer for buying and selling used cars, with headquarters in San Francisco and operations in Oakland and Pomona, California. The Debtors aimed to provide digital solutions for customers nationwide and operated online platforms that allowed customers to: (a) find the right car and test drive it before purchasing, (b) access a seamless digitally-driven purchase transaction, including financing and vehicle products, and (c) utilize the Company's digital trade-in/sale transaction. However, in June 2023, the Debtors decided to pivot entirely to a dealership model and discontinue its ecommerce investment. The Debtors were organized into two business segments: retail and wholesale. The retail segment represented retail sales of used vehicles through the Debtors' retail locations and ecommerce platform, while the wholesale segment represented sales of used vehicles through wholesale auctions or directly to a wholesaler.

13. Prior to the Petition Date the Debtors, as used car retailers, maintained business relationships with various business entities, through which the Debtors regularly purchased, sold, received, and/or delivered goods and services. The Debtors also regularly paid for services used to facilitate their business.

14. The Debtors' financial difficulties that led to the decision to file petitions for bankruptcy are attributable to a combination of factors, all of which placed significant stress on the Debtors' liquidity position in the months leading up to the Petition Date. A summary of the Debtors' prepetition operations, debt structure, and factors that led to the Bankruptcy Case are set forth in Article III.A of the Disclosure Statement and are incorporated herein by reference.

15. During the ninety (90) days before and including the Petition Date, *i.e.*, between July 11, 2023, and October 9, 2023 (the "Preference Period"), the Debtors continued to operate their

---

[8] Docket No. 7.

business, including the transfer of money, either by checks, cashier checks, wire transfers, ACH transfers, direct deposits or otherwise to various entities.

16. Upon information and belief, during the course of their relationship, the Defendant and one of more of the Debtors entered into agreements for the purchase of goods and/or services by Debtors from the Defendant, which are evidenced by one or more contracts, purchase orders, invoices, communications and other documents (collectively, the "Agreements"). Upon further information and belief, the Agreements concerned and related to the goods and/or services provided by Defendant to one or more of the Debtors as described in the "Parties" section of this Complaint. The payments to the Defendant in respect of the Agreements during the Preference Period are set forth on the Statement of Account, which is attached hereto and incorporated by reference as Exhibit A. Such details include "Invoice Number," "Invoice Date," and "Invoice Amount."

17. One or more of the Debtors made transfer(s) of an interest of the Debtors' property to or for the benefit of Defendant during the Preference Period through payments aggregating to an amount not less than $12,421.66 (the "Transfer" or "Transfers"). The details of each Transfer are set forth on Exhibit A attached hereto and incorporated by reference. Such details include "Transfer Number," "Transfer Amount," "Clear Date," and "Debtor Transferor(s)."

18. Plaintiff is seeking to avoid all of the transfers of an interest of the Debtors' property made by the applicable Debtor(s) to Defendant within the Preference Period.

19. On or about April 8, 2025, Plaintiff, through counsel, sent a demand letter (the "Demand Letter") to Defendant, seeking a return of the Transfer(s). The Demand Letter indicated the potential statutory defenses available to Defendant pursuant to section 547 of the Bankruptcy Code and requested that if Defendant had evidence to support any affirmative defenses, it provide this evidence for Plaintiff's review.

20. Plaintiff also performed its own due diligence evaluation of the reasonably knowable affirmative defenses available to Defendant. As part of this due diligence, Plaintiff reviewed the books and records in Plaintiff's possession and identified that Defendant potentially has $    .00 in invoices qualifying for the subsequent new value defense under section 547(c)(4) of the Bankruptcy Code. However, the subsequent new value defense is an affirmative defense, for which Defendant bears the

burden of proof under section 547(g). The potential new value is based on the invoice date in the books and records. As the dates for new value are often based on the shipping dates for goods and the actual dates of service for services, this new value is subject to adjustment. Additionally, section 547(c)(4)(B) provides that any potential new value must not be paid for by "an otherwise unavoidable transfer." To the extent that i) there are any prepayments in the Preference Period paying such new value that are not subject to avoidance by Plaintiff, or ii) Defendant successfully asserts affirmative defenses, including but not limited to the ordinary course of business defense or the contemporaneous exchange for new value defense, certain invoices may no longer be available for new value and the new value amount may be subject to reduction. Accordingly, Plaintiff puts Defendant to its burden of proof to establish it is entitled to this new value.

21. Additionally, Plaintiff reviewed the books and records in its possession to examine whether historical payment records exist that may be used to analyze whether, and to what extent, Defendant may be able to assert the subjective ordinary course of business affirmative defense. However, the subjective ordinary course of business defense is an inherently factual endeavor, and payment history is only one factor. The presence of collection pressure, tightening of credit terms, a creditor's loss of credit insurance, and/or threats to stop shipments without payment, can make even statistically ordinary payments unordinary. Certain information related to these factors may only be in Defendant's possession, which Plaintiff is entitled to request during discovery. Accordingly, Plaintiff puts Defendant to its burden of proof to establish it is entitled to the ordinary course of business affirmative defense.

22. Based upon Plaintiff's review of the information, if any, provided by Defendant prior to filing this Complaint, and after performing Plaintiff's own due diligence evaluation of the reasonably knowable affirmative defenses to avoidance of the Transfer(s), Plaintiff has determined that Plaintiff may avoid some or all of the Transfers even after taking into account Defendant's alleged affirmative defenses.

23. During the course of this proceeding, Plaintiff may learn (through discovery or otherwise) of additional transfers made to Defendant during the Preference Period. It is Plaintiff's intention to avoid and recover all preferential transfers of property made by the Debtors to or for the

benefit of Defendant or any other transferee. Plaintiff reserves its right to amend this original Complaint to include: (i) further information regarding the Transfer(s), (ii) additional transfers, (iii) modifications of and/or revision to Defendant's name, (iv) additional defendants, and/or (v) additional causes of action, if applicable (collectively, the "Amendments"), that may become known to Plaintiff at any time during this adversary proceeding, through formal discovery or otherwise, and for the Amendments to relate back to this original Complaint.

## CLAIMS FOR RELIEF

### COUNT I
### (Avoidance of Preference Period Transfers – 11 U.S.C. § 547)

24. Plaintiff incorporates all preceding paragraphs as if fully re-alleged herein, to the extent they are not inconsistent with allegations contained in this First Claim for Relief.

25. As more particularly described on Exhibit A attached hereto and incorporated herein, during the Preference Period, the Debtor(s) identified on Exhibit A made Transfers to or for the benefit of Defendant in an aggregate amount not less than $12,421.66.

26. Each Transfer was made from the Debtor(s) identified on Exhibit A, and constituted transfers of an interest in property of the transferring Debtor(s) as identified on Exhibit A.

27. Defendant was a creditor at the time of each Transfer by virtue of supplying the Debtor(s) identified on Exhibit A the goods and/or services identified in this Complaint and in the Agreements, as more fully set forth on Exhibit A hereto, for which the Debtor(s) identified on Exhibit A were obligated to pay following delivery in accordance with the Agreements. *See* Exhibit A.

28. Each Transfer was to or for the benefit of a creditor within the meaning of section 547(b)(1) of the Bankruptcy Code because each Transfer either reduced or fully satisfied a debt or debts then owed by the Debtor(s) identified on Exhibit A to Defendant.

29. Each Transfer was made for, or on account of, an antecedent debt or debts owed by the Debtor(s) identified on Exhibit A to Defendant before such Transfers were made, as asserted by Defendant and memorialized in the Agreements, each of which constituted a "debt" or "claim" (as those terms are defined in the Bankruptcy Code) of Defendant prior to being paid by the transferring Debtor(s) as set forth on Exhibit A hereto.

30. Each Transfer was made while Plaintiff was insolvent. Plaintiff is entitled to the presumption of insolvency for each Transfer made during the Preference Period pursuant to section 547(f) of the Bankruptcy Code.

31. Each Transfer was made during the Preference Period, as set forth on Exhibit A.

32. As a result of each Transfer, Defendant received more than Defendant would have received if: (i) the Debtors' cases were under chapter 7 of the Bankruptcy Code; (ii) the Transfers had not been made; and (iii) Defendant received payments of its debts under the provisions of the Bankruptcy Code. As evidenced by the Debtors' schedules filed in the Chapter 11 Cases as well as the proofs of claim that have been received to date, the Debtors' liabilities exceed their assets to the point that unsecured creditors will not receive a full payout of their claims from the Debtors' bankruptcy estates.

33. In accordance with the foregoing, each Transfer is avoidable pursuant to 11 U.S.C. § 547(b).

## COUNT II
### (Avoidance of Fraudulent Conveyances – 11 U.S.C. § 548(a)(1)(B))

34. Plaintiff hereby incorporates all previous allegations as though fully set forth herein, to the extent they are not inconsistent with allegations contained in this Second Claim for Relief.

35. To the extent one or more of the Transfers identified on Exhibit A was not made on account of an antecedent debt, was a prepayment for goods and/or services subsequently received, or was a transfer made by one Debtor without a corresponding transfer into the payment account by the Debtor incurring the debt, Plaintiff pleads in the alternative that the Debtor(s) making such transfer(s) did not receive reasonably equivalent value in exchange for such transfer(s) (the "Potentially Fraudulent Transfers"); and

A. The Debtors were insolvent as of the date of the Transfer(s), or became insolvent as a result of the Transfer(s); or

B. The Debtors were engaged, or about to engage, in business or a transaction for which any property remaining with the Debtors was an unreasonably small capital; or

C. The Debtors intended to incur, or believed they would incur, debts beyond their ability to pay upon maturity.

42. Based upon the foregoing, the Potentially Fraudulent Transfers are avoidable pursuant to section 548(a)(1)(B) of the Bankruptcy Code

### COUNT III
### (Recovery of Avoided Transfers – 11 U.S.C. § 550)

43. Plaintiff incorporates all preceding paragraphs as if fully re-alleged herein, to the extent they are not inconsistent with allegations contained in this Third Claim for Relief.

44. Plaintiff is entitled to avoid the Transfer(s) pursuant to section 547(b) of the Bankruptcy Code and/or any Potentially Fraudulent Transfers pursuant to section 548 of the Bankruptcy Code (collectively, the "Avoidable Transfers").

45. Defendant was the initial transferee of Avoidable Transfers or the immediate or mediate transferee of such initial transferee or the person for whose benefit the Avoidable Transfers were made.

46. Pursuant to 11 U.S.C. § 550(a), Plaintiff is entitled to recover the Avoidable Transfers from Defendant, plus interest thereon to the date of payment and the costs of this action.

### COUNT IV
### (Disallowance of all Claims – 11 U.S.C. § 502(d) and (j))

47. Plaintiff incorporates all preceding paragraphs as if fully re-alleged herein to the extent they are not inconsistent with allegations contained in this Fourth Claim for Relief.

48. Defendant is a transferee of transfers avoidable under sections 547 and/or 548 of the Bankruptcy Code, which property is recoverable under section 550 of the Bankruptcy Code.

49. Defendant has not paid the amount of the Avoidable Transfers, or turned over such property, for which Defendant is liable under 11 U.S.C. § 550.

50. Pursuant to 11 U.S.C. § 502(d), any and all Claims of Defendant and/or its assignee, against Plaintiff or the Debtors' estates must be disallowed until such time as Defendant pays to Plaintiff an amount equal to the aggregate amount of the Avoidable Transfers, plus interest thereon and costs.

51. Pursuant to 11 U.S.C. § 502(j), any and all Claims of Defendant, and/or its assignee, against the Debtors' estates previously allowed by the Debtors, must be reconsidered and disallowed until such time as Defendant pays to the Plaintiff an amount equal to the aggregate amount of the Avoidable Transfers.

## **PRAYER**

WHEREFORE, Plaintiff prays for entry of judgment against Defendant as follows:

1. On the First, Second, and Third Claims for Relief, judgment in favor of Plaintiff and against Defendant, avoiding all of the Avoidable Transfers and directing Defendant to return to Plaintiff the amount of the Avoidable Transfers, pursuant to 11 U.S.C. §§ 547(b), 548, and 550(a), plus interest from the date of demand at the maximum legal rate and to the fullest extent allowed by applicable law, together with the costs and expenses of this action including, without limitation, attorneys' fees;

2. On Plaintiff' Fourth Claim for Relief, judgment in favor of Plaintiff and against Defendant disallowing any claims held or filed by Defendant against Plaintiff until Defendant returns the Avoidable Transfers to Plaintiff pursuant to 11 U.S.C. § 502(d) and (j); and

3. For such other and further relief as the Court deems just and proper.

DATED: October 8, 2025

KELLER BENVENUITTI KIM LLP
Dara L. Silveira

and

ASK LLP
Gary D. Underdahl (admitted pro hac vice)

By:   */s/ Gary D. Underdahl*

   Attorneys for Arch & Beam Global, LLC as Trustee
   of the Shift Technologies Liquidating Trust

Case: 25-03047    Doc# 1    Filed: 10/08/25    Entered: 10/08/25 10:58:36    Page 11 of 11